**SO ORDERED: May 24, 2005.**



_____
**Anthony J. Metz III
United States Bankruptcy Judge**



UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| STATON, DENNIS LEE | ) | CASE NO. O4-15755-AJM-7A |
| STATON, TERRI LYNN, | ) | |
| Debtors. | ) | |
| _____ | ) | |
| | ) | |
| JOHN J. PETR, Trustee | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | ADVERSARY PROCEEDING NO. 04-662 |
| vs. | ) | |
| | ) | |
| FORUM CREDIT UNION, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>FINDINGS OF FACT, CONCLUSIONS OF LAW AND
SUMMARY JUDGMENT ENTRY</u>**

*A. Background*

On November 8, 2004, John J. Petr, the Trustee (the "Trustee" or the "Plaintiff")

in the chapter 7 bankruptcy case of Dennis and Terri Staton (the "Debtors"), filed his

1

"Complaint to Avoid Preferential Transfer and for Turnover of Certificate of Title", seeking avoidance of the lien held by Forum Credit Union ("Forum") in the Debtors' 2002 Chrysler PT Cruiser and release by Forum of the lien for recovery for the benefit of the chapter 7 estate.  The Trustee has moved for summary judgment and Forum has filed its cross motion for summary judgment.  Hearing on the motions was held on March 28, 2005 wherein the Trustee, John Petr appeared; Forum appeared by counsel Mark S. Gray.  The Court, after having conducted a hearing on the cross motions for summary judgment, directed the parties to submit their respective findings of fact and conclusions of law within thirty (30) days.  The Trustee submitted his findings on April 6th and Forum submitted its on April 19th.  The Court, being duly advised, now makes its findings of fact and conclusions of law.

### *B. Findings of Fact*

The Trustee and Forum have stipulated to the following facts:

1.     On July 15, 2004, the Debtors executed and delivered to Bill Estes Ford a Retail Installment Contract and Security Agreement ("Contract") for the purchase of a 2002 Chrysler PT Cruiser, Serial No. 3CAFY48B92T234885 (the "Vehicle").

2.     Forum financed Debtors' purchase of the Vehicle and the Debtors incurred the obligation represented by the Contract as all or part of the price of the Vehicle.  The Debtors and Forum intended that the Vehicle would be pledged as collateral to secure the purchase price and Forum gave new value by way of money and new credit to enable the Debtors to acquire rights in the Vehicle, and the value was so used.

3.     The Debtors took possession of the Vehicle on July 15, 2004.  On August 26, 2004, or forty-two (42) days after the purchase date, the Debtors submitted to the

2

Indiana Bureau of Motor Vehicles an Application for Certificate of Title, on which Forum was identified as holding a lien on the Vehicle.

4. The Debtors filed their chapter 7 case on August 30, 2004.

5. The Indiana Certificate of Title for the Vehicle was issued on September 2, 2004.

6. The Vehicle is a consumer good.

7. Forum is a creditor in this proceeding, and the balance on the Contract is approximately $15,682.30.

8. During the pendency of this matter, Forum requested and obtained relief from the automatic stay. Thereafter, Forum took possession of and re-sold the Vehicle, and the net sale proceeds in the sum of $5,939.00 are being held in the trust account maintained by Forum's counsel.

### C. Conclusions of Law

#### *1. Summary Judgment Standard*

9. Summary judgment is properly granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P.56, (which is applicable to bankruptcy adversary proceedings by Fed.R.Bankr.P.7056).

10. The party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The ultimate burden of demonstrating the existence of a genuine issue of material fact, however, lies with the non-moving party. *Id.*

3

11. The mere existence of a factual dispute is not, by itself, sufficient to bar summary judgment. A factual dispute does not preclude summary judgment unless the disputed fact is outcome determinative. Irrelevant or unnecessary facts do not preclude summary judgment, even when they are in dispute. *Kaken Pharmaceutical Co. v. Eli Lilly and Co.,* 737 F.Supp. 510, 515 (S.D. Ind. 1989).

### *2. Avoidance of a preferential transfer under §547(b)*

12. The policy behind Section 547's avoiding powers is to deter unusual credit and collection practices right before bankruptcy and to promote equal distribution of assets to similarly situated creditors within a bankruptcy. See, Norton Bankruptcy Law and Practice 2d §57.1; *In re Energy Co-op, Inc.*, 832 F.2d 997, 1003 (7th Cir. 1987).

13. A trustee seeking to avoid a preferential transfer under §547(b) must prove by a preponderance that: (1) a transfer of an interest of the debtor in property was made: (2) to or for the benefit of a creditor; (3) for or an account of an antecedent debt; and that the transfer was (4) made while the debtor was insolvent; (5) on or within 90 days before the bankruptcy; and it (6) enabled the creditor to receive more than it would receive in a chapter 7 if the transfer had not been made. *Esser v. First Federal Financial Services, Inc. (In re Carini)*, 245 B.R. 319, 321 (Bankr. E. D. Wis. 2000). [1]

---

[1] 11 U.S.C. § 547(b) provides in pertinent part:

(b) [T]he trustee may avoid any transfer of an interest of the debtor in property –
(1) to or for the benefit of a creditor;
(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
(3) made while the debtor was insolvent;
(4) made –
(A) on or within 90 days before the date of the filing of the petition; . . . and
(5) that enables such creditor to receive more than such creditor would receive
 if----
(A) the case were a case under chapter 7 of this title;
(B) the transfer had not been made; and
(C) such creditor received payment of such debt to the extent provided by the provisions

14. The parties agree that the only element at issue with respect to the Trustee's proof of the §547(b) elements is whether the "transfer" here – the perfection of Forum's lien in the Vehicle– was made for or on account of an antecedent debt. Forum also raises the "contemporaneous exchange for new value" defense under 547(c)(1) [2] and the "enabling loan" defense under 547(c)(3). [3] Both the trustee's proof and Forum's defenses depend upon the determination of when the transfer occurred. If the transfer (e.g. perfection of the security interest) occurred at or about the same time as the date the debt was created, then the transfer is not avoidable.

15. Section 547(e)(2) provides guidance as to when the "transfer" occurs:

> For the purposes of this section [section 547], except as provided in paragraph (3) of this subsection, a transfer is made –
>
> (A)   at the time such transfer takes effect between the transferor and

---

of this chapter.

[2] §547(c)(1) provides that a trustee may not avoid a transfer to the extent the transfer was

(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value to the debtor; and

(B) in fact a substantially contemporaneous exchange.

[3] Section 547(c)(3) provides that a trustee may not avoid a transfer that creates a security interest in property acquired by the debtor

(A) to the extent such security interest secures new value that was

  (i) given at or after the signing of a security agreement that contains a description of such property as collateral:

  (ii) given by or on behalf of the secured party under such agreement;

  (iii) given to enable the debtor to acquire such property; and

  (iv) in fact used by the debtor to acquire such property ; and

(B) that is perfected on or before 20 days after the debtor receives possession of such property.

5

> the transferee, if such transfer is perfected at, or within 10 days after, such time, except as provided in subsection (c)(3)(B); [4]
>
> (B) at the time such transfer is perfected, if such transfer is perfected after such 10 days; or
>
> (C) immediately before the date of the filing of the petition, if such transfer is not perfected at the later of–
>
> (i) the commencement of the case; or
>
> (ii) 10 days after such transfer takes effect between the transferor and the transferee.

Thus, the security interest must be perfected within ten (10) days of the date it is granted for the transfer to relate back. If it is perfected outside the 10 day period, the transfer is deemed to have occurred when it is perfected, not when the security interest was granted. *Walker v. Ford Motor Credit Company (In re Clark)*, 112 B.R. 226, 229 (Bankr. E. D. Tenn. 1990). The Trustee prevails on the elements needed to be proven under §547(b) if the security interest was perfected after July 25, 2004.

### *3. When was the security interest perfected?*

16. The Trustee contends that Forum's security interest in the Vehicle was not perfected until the Vehicle was registered with the Bureau of Motor Vehicles, and the Vehicle's certificate of title contained a notation of Forum's lien. Those two steps did not occur until August 26, 2004, more than thirty (30) days outside the ten day period under §547(e)(2).

17. Forum contends that notation of the certificate of title and registration with the Bureau of Motor Vehicles was not necessary to perfect its lien. Rather, it argues

---

[4] Section 547(c)(3)(B) provides that a trustee may not avoid a transfer that creates a security interest in property acquired by the debtor that is perfected on or before 20 days after the debtor receives possession of such property.

that the Vehicle is a consumer good (to which the parties have stipulated). The security interest taken by Forum was a purchase money security interest in a consumer good which is automatically perfected, i.e, perfected upon attachment of the security interest. Forum's security interest attached on July 15, 2004, the date of purchase, and therefore Forum's lien was perfected on that date, well within the ten day period under §547(e)(2).

18.     Under Ind. Code §26-1-9.1-309 [5], certain purchase money security interests in consumer goods *are* perfected upon attachment. However, excepted from this "automatic perfection" provision are purchase money security interests in consumer goods that are subject to Ind. Code §26-1-9.1-311(a) and (b):

The following security interests are perfected when they attach:

(1) A purchase money security interest in consumer goods, *except as otherwise provided in IC 26-1-9.1-311(b) with respect to consumer goods that are subject to a statute or treaty described in IC 26-1-9.1-311(a).*

19.     Ind. Code §26-1-9.1-311(a) in turn provides:

(a)     ...the filing of a financing statement is not necessary or effective to perfect a security interest in property subject to:

   (2)     any Indiana certificate of title statute covering automobiles, trailers, mobile homes, boats, farm tractors, or the like, which provides for a security interest to be indicated on the certificate as a condition or result of perfection...

(b)     ....Except as otherwise provided in subsection (d), IC 26-1-9.1-313, IC 26-1-9.1-316(d), and IC 26-1-9.1-316(e) [6] for goods covered by a certificate of

---

[5] Indiana's version of the Uniform Commercial Code is found in Title 26. Article 9 of the UCC was revised, effective July 1, 2001 ("Revised Article 9") and Revised Article 9 is designated in Title 26 as "Chapter 9.1". The Court will hereinafter refer to a particular section of Revised Article 9 as "9.1-(section)".

[6] Subsection (d) of 9.1-311 requires that a financing statement *is* to be filed to perfect a security interest in an automobile that is held as inventory for sale or lease by a person in the business of selling or leasing automobiles. 9.1-313 deals with perfection of a security interest in an automobile by taking possession of it, and 9.1-316 (d) and (e) address the continued perfection of a security interest of an

7

> title, a security interest in property subject to a statute, regulation or treaty described in subsection (a) may be perfected only by compliance with those requirements...

19. So, 9.1-309 says that perfection of a purchase money security interest in an automobile that is to be used as a consumer good is automatic unless 9.1-311(a) or (b) applies. 9.1-311(a) and (b) turn provide that a financing statement is necessary and effective to perfect an security interest in consumer goods *unless* an Indiana certificate of title statute requires the notation of the security interest on the certificate of title as a condition for perfection. If a certificate of title statute applies, then compliance with that statute is the only way to perfect the purchase money security interest. However, Forum contends that, if the certificate of title statutes do not apply, then 9.1-309 applies and perfection is automatic upon attachment. This interpretation is subject to dispute, given the prefatory sentence of 9.1-311(a). If a financing statement is not "necessary or effective" to perfect if the certificate of title statute applies, then, is the inverse true – that the financing statement *is* necessary if the certificate of title statue does *not* apply? This is at least a fair reading of 9.1-311 even though it conflicts with 9.1-309. One could not say that, as a matter of law, only 9.1-309 applies in the absence of a certificate of title provision that governs perfection. Since Forum never filed a financing statement, Forum would not be entitled to summary judgment.

20. Any discussion whether 9.1-309 or 9.1-311 applies is moot however, since, in the opinion of this Court, the 2000 revisions to Indiana's Article 9 did not change the method by which purchase money security interests in automobiles are to be perfected.

---

automobile where it has been moved to another state, and the four month "grace" period in which to perfect in the new state. None of these provisions applies here.

### *4. Indiana's Certificate of Title Statute, Ind. Code §9-17*

21. Forum argues that *nothing* in Indiana's certificate of title statute expressly provides that security interests in automobiles must be perfected by notation of the lien on the certificate of title.

22. It is well established and Forum does not dispute that, prior to the revisions to Article 9 which became effective July 1, 2001, the only way to perfect a security interest in an automobile that was to be used as a consumer good in the hands of the buyer was by (a) notation of the lien on the vehicle's certificate of title, and (b) registration with the Indiana Bureau of Motor Vehicles. *See First Nat. Bank of Milltown v. Schrader*, 375 N.E.2d 1124 (Ind.App. 1978) (a security interest in a motor vehicle not held as inventory is perfected by notation on the certificate of title and not by way of a financing statement.); *United Leaseshares, Inc. v. Citizens Nat. Bank*, 470 N.E.2d 1383 (Ind. Ct. App. 1984) (Mere notation of a lien upon the title for an automobile, without registering with the Bureau of Motor Vehicles, is insufficient to perfect a security interest.).

23. Forum argues that the 2001 revisions *to Article 9* changed that. The forerunner of 9.1-Section 311 was 9-302(3) which provided in part:

> (3) The filing of a financing statement otherwise required by IC 26-1-9 is not necessary or effective to perfect a security interest in property subject to :
>
> (b) *IC 9-17 concerning motor vehicles*, including IC 9-17-6 concerning manufactured homes, or IC 9-31-2-24 concerning watercraft....

Under this pre-amendment statute, it appears that, as long as the good was "subject to" the certificate of title statute concerning motor vehicles, then the filing of a financing statement was not effective to perfect. Now under current 9.1-311 which replaced 9-

9

302, Forum argues that Indiana General Assembly removed the reference to "IC 9-17" but replaced it with the more detailed phrase "any Indiana certificate of title statute covering automobiles...*which provides for a security interest to be indicated on the certificate as a condition or result of perfection*...".

24.     Ind. Code §9-17 contains no provision which specifically provides that the method to perfect a security interest in an automobile is for the lien to be noted on the certificate of title.  However, it contains several references that a certificate of title is necessary and that liens are to be noted on it.  For instance, within sixty (60) days of becoming an Indiana resident, the resident must obtain a certificate of title for all vehicles owned by him that are subject to the motor vehicle excise tax and that will be operated in Indiana.  Ind. Code §9-17-2-1.  Anyone applying for a certificate of title must submit an application on a form furnished by the Indiana Bureau of Motor Vehicles (BMV) which contains certain information, including a statement of "any lien or encumbrance on the vehicle".  Ind. Code §9-17-2-2.   This form furnished by the BMV must be signed by the applicant under the penalties of perjury.  Ind. Code §9-17-2-3. Once the BMV determines that a certificate of title can be issued, see, Ind. Code §9-17-2-10, then it delivers the certificate to the owner if no lien appears on the certificate.  If a lien appears on the certificate, the BMV then delivers the certificate to the person named to receive it in the application for the certificate.  Ind. Code §9-17-2-11.  A person who has possession of a certificate of title because he holds a lien on the motor vehicle must deliver within ten (10) days the certificate of title to the owner once the lien is paid in full  Ind. Code §9-17-5-1.

25.     These provisions taken together give rise to the strong inference that the

10

legislature intended that liens on automobiles were to be noted on the certificate of title. Automatic perfection upon attachment with nothing more does not take into account the unique nature of automobiles compared to other consumer goods. The volume of sales of other consumer goods such as washers, dryers and televisions are so voluminous that compliance with a written notice requirement by the lienholder in order to perfect a purchase money security interest in those goods would be commercially burdensome, given their relatively short useful life, fungible nature and (compared to automobiles) minimal value. Such goods are not regularly traded in for newer models. However, automobiles are different. They – perhaps more than any other type of consumer good – are transitory and subject to being further resold by their buyers. Their easily removable nature and value requires that any lien on them be noticed to the rest of the world so that a potential lender can determine whether it can be pledged as collateral or whether it is fully encumbered. Automatic perfection does not accomplish these goals. If automatic perfection were the method of perfection for automobiles, there would be no need for the references to a certificate of title and the liens and encumbrances thereon in Ind. Code §9-17.

26.    Forum argues that Ind. Code §9-17-6-7 specifically provides that a security interest in a manufactured home that is not held as inventory may only be perfected by indicating the security interest on the certificate of title and that there is no such similar provision for automobiles. The same is true for Ind. Code §9-31-2-24 which provides that a security interest in watercraft not held as inventory is perfected by notation on the certificate of title. Forum then makes the leap in logic that "espressio unius est exclusio alterius"– that which is not enumerated is excluded.

27.    It appears that Ind. Code §9-17 *never* specifically provided that perfection of a security interest in an automobile was accomplished by notation of the certificate of title.  The Court could not find any such statute, superseded or otherwise, and the parties have pointed the Court to none.  This is not the case where the legislature repealed such a statute contemporaneously with the enactment of Indiana's revised Article 9.  Indeed, it appears that as far as automobiles are concerned, the certificate of title provisions that were in effect before the revisions to Article 9 remain in effect today with little change.  Most of the certificate of title provisions detailed above were enacted in 1991.  The manufactured home provision of Ind. Code §9-17-6-7 also discussed above likewise was enacted in 1991.  If these statutes collectively addressed perfection of security interests in manufactured homes but not automobiles (thus creating the presumption that such interests in automobiles were perfected differently than security interests in other motor vehicles), then presumably that distinction would have been made in cases handed down after 1991.  No such distinctions in the case law have been made, or at least none have been found by this Court.  Nor has this Court located a case that indicates a shift in methods of perfection of security interests in automobiles as a result of the 1991 enactment of Ind. Code §9-17-6-7.  In fact, at least one bankruptcy court in 1994 cited with favor the *United Leaseshares* case and held that in this state the proper method to perfect a security interest in a 1990 Ford Bronco is the notation of the lien on a certificate of title and the registration of the certificate with the BMV.  *Warsco v. Ford Motor Credit Company (In re Zank)*, 1994 WL 236196 at *1 (Bankr. N.D. Ind.).  The Court does not doubt that perhaps legislative "tweaking" would be in order to bring into symmetry the certificate of title provisions relating to

12

automobiles and other types of motor vehicles. However, this Court is convinced that, despite the revisions to Article 9 in 2001, the General Assembly did not intend to change existing law with respect to perfection of security interests in automobiles and this Court otherwise is loathe to overturn what has been a well established principle in commercial law. Thus, as a matter of law, Forum's security interest in the Vehicle was perfected on August 26, 2004 when the Debtors submitted to the Indiana Bureau of Motor Vehicles an Application for Certificate of Title, on which Forum was identified as holding a lien on the Vehicle. Because the lien was perfected more than ten days after the loan was made, §547(e)(2) dictates that the "transfer" occurred when the lien was perfected. Thus, the "transfer" occurred on August 26, 2004 and was made for or on account of an antecedent debt. Since this was the only contested element that the Trustee had to prove under §547(b), the Court finds that the transfer meets all the elements of an avoidable transfer.

### 5. The "enabling loan" defense under §547(c)(3)

28. Forum avails itself of two defenses in order to avoid liability. The first is the "enabling loan" defense under §547(c)(3). Under this defense, the trustee cannot avoid a security interest for a loan used to acquire the encumbered property (e.g. purchase money security interest) if the security interest is perfected "on or before 20 days after the debtor receives possession of such property". See, *Fidelity Financial Services, Inc. v. Fink*, 522 U.S. 211, 118 S.Ct. 651, 139 L.Ed.2d 571 (1998).

29. "Perfection" occurs when the creditor who accepted the transfer has rights in the property so transferred that are superior to a creditor that acquires a judicial lien on the property. See §547(e)(1). The parties have stipulated that the Debtors received

possession of the Vehicle on July 15, 2004.  For Forum to successfully invoke this defense, perfection of its purchase money security interest in the Vehicle would have to have occurred no later than August 4, 2004.  The Court has found that perfection occurred on August 26, 2004, well outside the twenty day period.  Accordingly, this defense fails.

### 6. The "Contemporaneous Exchange for New Value" Defense under §547(c)(1)

30. Under §547(c)(1), a trustee cannot avoid a transfer to the extent the transfer was

  (A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor ; and

  (B) in fact a substantially contemporaneous exchange.

31. The first prong of this defense has been met, since the parties here have stipulated that the Debtors and Forum intended that the Vehicle would be pledged as collateral to secure the purchase price and Forum gave new value by way of money and new credit to enable the Debtors to acquire rights in the Vehicle, and the value was so used.

32. Whether Forum has proven the second prong is not as easily determined. This second prong refers to not merely a "contemporaneous exchange" like the first but rather a "*substantially* contemporaneous exchange" which requires a case by case inquiry.  See, *Vieira v. Anna National Bank (In re Messamore)*, 250 B.R. 913, 920 (Bankr. S. D. Ill. 2000).  So, the loaning of the money in exchange for the granting and the perfection of the security interest may not be "contemporaneous" (e.g. all occurring

14

on the same day) but nevertheless may be timed sufficiently close enough to be "substantially contemporaneous". If there is a delay between the date the loan was made and the security interest was perfected, the Court considers the length of the delay, the reason for the delay, and the nature of the transaction. Even delays of sixteen (16) days are acceptable to still be considered "substantially contemporaneous", see, *In re Dorholt, Inc.*, 224 F.3d 871, 873 (8th Cir. 2000) and delays of two to three weeks may still render the transfer "substantially contemporaneous" if the creditor "took immediate steps to begin the process of collateralization". *Messamore*, 250 B.R. at 920, quoting *Pine Top Ins. Co. V. Bank of America Nat. Trust & Sav Ass'n*, 969 F.2d 321, 328 (7th Cir. 1992). However, as the number of days between the making of the loan and the perfection of the security interest increases, so too does the concern that a too-expansive view of "substantially contemporaneous" under §547(c)(1) might lead to the creation of "secret liens" where creditors wait to perfect until a debtor's financial troubles become apparent. *Arnett v. Security Mutual Finance Corp.*, 731 F.2d 358, 363 (6th Cir. 1984).

33.   Here, the record is silent as to the steps, if any, taken by Forum to perfect its security interest and the reason for the delay in perfecting. However, the delay here between the date the loan was made (July 15, 2004) and the date the security interest in the Vehicle was perfected (August 26, 2004) amounted to forty-two (42) days, or six (6) weeks. That length of time between the loan and perfection cannot be said to be "substantially contemporaneous". See, *Arnett*, 731 F.2d at 364 (33 days not "substantially contemporaneous"); *Computer Personalities Systems, Inc. v. Aspect Computer*, 320 B.R. 812, (E.D. Pa. 2005) (three weeks not "substantially

15

contemporaneous").

34.     The Court finds that there is no genuine issue of material fact and, as a matter of law, the Trustee has proven the elements under §547(b) and Forum cannot avail itself of the defenses under §547(c)(1) and §547(c)(3).  Accordingly, the Court will entered summary judgment in favor of the Trustee.

### D.  Order / Entry of Summary Judgment

IT IS, THEREFORE, ORDERED, ADJUDGED and DECREED as follows:

1.      The Trustee's Motion for Summary Judgment shall be and hereby is granted, and Forum Credit Union's Cross-Motion for Summary Judgment shall be and hereby is denied.

2.      Summary judgment shall be and hereby is entered in favor of the Trustee and against the Defendant, Forum Credit Union.

3.      Forum Credit Union is hereby ordered to turn over to the Trustee the sum of $5,939.00 realized from the sale of the Vehicle.

# # #

Distribution:

John J. Petr, Chapter 7 Trustee
111 Monument Circle, Suite 900
Indianapolis, Indiana 46204-5125

Mark S. Gray
DOYLE & FRIEDMEYER, P.C.
First Indiana Plaza, Suite 2000
135 North Pennsylvania Street
Indianapolis, Indiana  46204

Nancy J. Gargula
United States Trustee
101 West Ohio Street #1000
Indianapolis, IN  46204

Case 04-00662    Doc 18    Filed 05/24/05    EOD 05/25/05 14:26:51    Pg 17 of 17